Filed 9/13/24  P. v. Pettus CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083208 |
| v. | (Super.Ct.No. FBA02346) |
| DARRELL HERMAN PETTUS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Darrell Herman Pettus, in pro. per.; William G. Holzer, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Darrell Herman Pettus filed a petition for resentencing pursuant to Penal Code former section 1170.95,[1] which the court denied. On appeal, counsel has filed a brief under the authority of *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), setting forth a statement of facts, a statement of the case, and requesting that we exercise our discretion to independently review the record for error.

This court offered defendant the opportunity to file a personal supplemental brief, which he has done.[2] Defendant contends the court erred in determining he failed to make a prima facie showing. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND[3]

On August 22, 1995, defendant and the victim left together for Las Vegas. Prior to leaving, the victim had a large amount of cash. The victim's body was found later that

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.)

[2] "If the defendant . . . files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion." (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.)

[3] We take judicial notice of this court's opinion from defendant's appeal from the judgment. (*People v. Pettus* (Aug. 23, 2000, E025211) [nonpub. opn.] (*Pettus*); Evid. Code § 459.) Although we recount the facts as recited in *Pettus*, we are cognizant that Assembly Bill No. 200 limited the use of prior appellate opinions by trial judges ruling on section 1172.6 petitions in most instances to "'the procedural history of the case recited.' [Citation.]" (*People v. Clements* (2022) 75 Cal.App.5th 276, 292; accord *People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted ["If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage."]; accord *People v. Cooper* (2022) 77 Cal.App.5th 393, 400, fn. 9.)

day on the side of Interstate 15.  The victim had sustained multiple gunshot wounds to his head and arm.  (*Pettus*, *supra*, E025211.)

"The evidence showed that [the victim] made a lot of money selling drugs in Las Vegas while defendant was unemployed and short of funds, that defendant and [the victim] left [Las Vegas] together in [a] Suburban for Los Angeles, that they were seen traveling on Interstate 15, that [the victim] was killed en route, that defendant returned alone in the Suburban to Los Angeles, and that defendant's wife had a large sum of money when defendant was arrested in her company.  There was no explanation as to why defendant's wife was carrying $4,460 in cash."  (*Pettus*, *supra*, E025211.)

A jury found defendant guilty of willful, deliberate, and premeditated murder (§ 187, subd. (a), count 1) and second degree robbery (§ 211, count 2).  The jury additionally found true allegations that defendant personally used a firearm in his commission of the murder and robbery (§ 12022.5, subd. (a)); the jury also found true a special circumstance that the murder was committed while defendant was engaged in a robbery.  (§ 190.2, subd. (a)(17).)  The court later found true allegations that defendant had suffered two prior prison terms.  (§ 667.5, subd. (b).)  The court sentenced defendant to state prison for life without the possibility of parole, plus four years.  (*Pettus*, *supra*, E025211.)

Defendant appealed.  This court affirmed the judgment.  (*Pettus*, *supra*, E025211.)

On April 27, 2022, the trial court struck both prior prison term enhancements.

3

On August 22, 2023, defendant filed a form petition for resentencing pursuant to former section 1170.95. On October 19, 2023, the People filed a memorandum of points and authorities in opposition to defendant's petition. The People argued that the jury's finding that defendant's commission of the murder was willful, deliberate, and premeditated rendered defendant ineligible for resentencing.

At a hearing on February 7, 2024, at which defendant was present and represented by counsel, the court issued a tentative ruling: "Upon reading the jury verdict forms, the Court finds the petitioner is ineligible for resentencing by law. Specifically[,] the jury found . . . defendant . . . committed the crime of murder willfully, deliberately and with premeditation, to be true. The petition is summarily denied."

Defense counsel responded "if we were to refer to the jury instructions, the jury was instructed on the natural and probable consequences theory. They were instructed on both the natural and probable consequences and felony murder. So irrespective of the finding of circumstances, I believe a prima facie case will be shown to move on to the next date for an order to show cause." "Your Honor, I believe that the jury instructions, rather than just the verdict form[s], would include the natural and probable consequences theory which is the trigger that would get us into review. In the initial petition, which is all [defendant] was required to file, we checked the box this was a natural and probable consequence theory." "This is a very limited review to just determine whether . . . the

jury was instructed on natural and probable consequences and felony murder as potential

theories of liability.  With that in place, this should move to the next stage of litigation."**4**

The People submitted on their opposition.  The court ruled that its "tentative is its

final ruling."**5**

## II.  DISCUSSION

Defendant contends the court erred in determining he had failed to make a prima

facie showing.  We disagree.

"The Legislature enacted Senate Bill [No.] 1437 'to more equitably sentence

offenders in accordance with their involvement in homicides.'  (Stats. 2018, ch. 1015,

§ 1(b).)  The Legislature recognized, 'It is a bedrock principle of the law and of equity

that a person should be punished for his or her actions according to his or her own level

of individual culpability.'  [Citation.]  With this purpose in mind, Senate Bill [No.] 1437

---

**4** Our review of the written jury instructions discloses no instruction on the natural
and probable consequences doctrine.

**5** On appeal, defense counsel moved this court to augment the record with the jury
instructions and verdict forms; we granted the request.  The augmented record reflects
that the trial court instructed the jury with CALJIC Nos. 8.10 and 8.21, on felony murder.
As given, CALJIC 8.10 reads, "Every person who unlawfully kills a human being with
malice aforethought [or] []during the commission or attempted commission of robbery is
guilty of the crime of murder . . . ."  "In order to prove this crime, each of the following
elements must be proved:  [¶]  1. A human being was killed [¶]  2. The killing was
unlawful, and [¶]  3. The killing [was done with malice aforethought] [or] [occurred
during the commission or attempted commission of robbery."  CALJIC No. 8.21 reads,
"The unlawful killing of a human being, whether intentional, unintentional or accidental,
which occurs during the commission or attempted commission of the crime of robbery is
murder of the first degree when the perpetrator had the specific intent to commit that
crime.  [¶]  The specific intent to commit robbery and the commission or attempted
commission of such crime must be proved beyond a reasonable doubt."

'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

""""[I]f the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.'"" [Citation.] Consequently, '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 460.)

"[T]he question is not whether it is likely a defendant could have felt and acted in such a [sufficiently culpable] way, but whether the court's jury instructions foreclose that possibility *as a matter of law*. Only in the latter scenario would a trial court be permitted to deny a defendant's section 1172.6 petition at the prima facie stage. [Citation.] In other words, only in that scenario would the record of conviction 'establish conclusively that the defendant is ineligible for relief.' [Citation.]" (*Curiel*, *supra*, 15 Cal.5th at p. 470.) """"This is a purely legal conclusion, which we review de novo."" [Citation.]" (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.) Thus, where the record of conviction reflects that the defendant was the actual killer, defendant is per se ineligible for relief and no evidentiary hearing is required. (*People v. Harden* (2022) 81 Cal.App.5th 45, 47-48, 52 (*Harden*).)

Here, "[w]ithout weighing conflicting evidence or making credibility determinations, the record of conviction irrefutably establishes as a matter of law that the jury determined [defendant] was the actual killer." (*Harden*, *supra*, 81 Cal.App.5th at p. 56; accord *People v. Morales* (2024) 102 Cal.App.5th 1120, 1131-1132; *People v. Patton* (2023) 89 Cal.App.5th 649, 657-658; *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1247 [Despite felony murder instruction, "reading all the charges, the instructions, the verdicts, and the findings as a whole, we see no legal route [the defendant's] jury could have taken to convict him without finding he was [the victim's] actual killer."].)

Here, as in *Harden*, defendant "was prosecuted solely on the theory he was the actual killer and committed the robbery alone."[6] (*Harden*, *supra*, 81 Cal.App.5th at p. 57.) Also as in *Harden*, the court instructed the jury with CALJIC No. 8.10, that every person who unlawfully kills a human being with malice aforethought or during the commission of certain felonies is guilty of murder. (*Harden*, at pp. 54-55) "'This language on its face tells the jury that "the person who unlawfully kills" is guilty of murder. In common understanding, this would refer to the person who inflicted the fatal injury.' [Citation.] The jury was instructed on no alternative definition of murder. Thus,

---

[6] Defendant notes that although he "was the only defendant in his trial, the prosecution collected and introduced evidence of witnesses who stated there were multiple suspects at the scene, and the state[] produced DNA evidence (blood) at the scene that didn't belong to either [defendant] or the victim." Of course, defendant offered no such evidence below, nor does he point to any such evidence on appeal. Regardless, as we discuss, the jury instructions and verdicts read together are susceptible to no other interpretation than that the jury found that defendant was the actual killer of the victim.

[defendant's] murder conviction necessarily means the jury determined []he actually killed [the victim]." (*Id*. at p. 55.) This is regardless of whether defendant intended the killing.

Moreover, again as in *Harden*, the court instructed the jury with CALJIC No. 8.80.1, "That instruction begins by stating: 'If you find the defendant in this case guilty of murder of the first degree, you must then determine if one or more of the following special circumstances are true or not true.' Thus, the jury would not even reach the issue of special circumstances unless it first convicted [defendant] of murder." (*Harden*, *supra*, 81 Cal.App.5th at p. 55.)

Here, as in *Harden*, the jury found the special-murder-circumstance allegation true. "A hypothetical juror who was not persuaded that [defendant] actually killed [the victim] could not have voted that the special circumstance was true. Thus, the unanimous true finding necessarily means the jury convicted [defendant] as the actual killer." (*Harden*, *supra*, 81 Cal.App.5th at p. 55, fn. omitted.) Furthermore, similar to *Harden*, the jury found defendant personally used a firearm in his commission of the murder and robbery. (*Pettus*, *supra*, E025211.) "Thus, when viewing the verdicts as a whole, the jury's true finding that [defendant] personally" used a firearm necessarily means it determined defendant shot the victim, intentionally or not. (*Harden*, at pp. 55-56 [Jury found the defendant personally inflicted great bodily injury]; see *People v. Jones* (2003) 30 Cal.4th 1084, 1119-1120 [Jury's finding that defendant personally used a firearm supported a determination that it found defendant to be the actual killer].)

8

Finally, we note that the court instructed the jury, "To constitute a deliberate and premeditated killing, the slayer must weigh and consider the question of killing and the reasons for and against such a choice and, having in mind the consequences, [he] decides to and does kill." (CALJIC No. 8.20) Thus, in finding defendant committed the murder willfully, deliberately, and with premeditation, in combination with its personal use and special circumstance findings, the jury necessarily found that defendant was the actual killer.[7] Although, none of these findings alone might render defendant per se ineligible for resentencing, their confluence "irrefutably establishes as a matter of law that the jury determined [defendant] was the actual killer." (*Harden, supra,* 81 Cal.App.5th at p. 56.) Thus, the court properly denied defendant's petition.[8]

---

[7] The People and the court below were incorrect in stating and finding that the jury's premeditation finding *alone* rendered defendant ineligible for resentencing. (*People v. Ramos* (2024) 103 Cal.App.5th 460, 465 [Under prior law, "an aider and abettor could be found guilty of premeditated attempted murder, even if the aider and abettor did not personally act with premeditation and deliberation, as long as the direct perpetrator acted with premeditation and deliberation."].) Here, however, as noted *ante*, the People tried defendant as the sole perpetrator; the court did not instruct the jury on aiding and abetting principles. Moreover, the jury found defendant killed the victim, found true the robbery-special-murder circumstance, and found defendant personally used a firearm. Thus, the jury necessarily found defendant was the actual killer. "'"[W]e will affirm a judgment correct on any legal basis, even if that basis was not invoked by the trial court. [Citation.] There can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct."'" (*Anderson v. Davidson* (2019) 32 Cal.App.5th 136, 144.)

[8] Defendant raises additional issues pertaining to the admissibility and sufficiency of the evidence admitted against him at trial. However, a section 1172.6 petition "does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings" (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; accord *People v. Burns* (2023) 95 Cal.App.5th 862, 865 ["Section 1172.6 does not create a right to a second appeal, and [defendant] cannot use it to

### III. DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER      
Acting P. J.

We concur:


CODRINGTON     
         J.


FIELDS       
         J.

---

resurrect a claim that should have been raised in his [earlier] direct appeal"].)  This is particularly true where, as here, defendant challenged the admissibility and sufficiency of the evidence adduced against him at trial in his appeal from the judgment.  This court rejected those challenges over two decades ago.  (*Pettus*, *supra*, E025211.)